**SO ORDERED.**

**SIGNED this 31st day of March, 2016.**





Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

JONATHAN E. LEDIN

Case No. 14-12347
Chapter 7

Debtor.

### ORDER DENYING DEBTOR'S MOTION FOR ORDER TO SHOW CAUSE WHY CREDITOR SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF DISCHARGE INJUNCTION

A chapter 7 discharge in bankruptcy enjoins creditors from commencing or continuing to enforce a prepetition debt as a personal obligation of the debtor. This injunction does not extend to actions to enforce a pre-petition, non-avoided lien. When a creditor issues an order of garnishment against a judgment debtor's bank deposits, the order attaches any credits or other debts owed by the depository bank to the debtor on the date that order is served. Like any other lien, a garnishment lien that

1

is not avoided or released "rides through" a chapter 7 bankruptcy case and remains effective after the debtor's discharge. While a garnishing creditor would be precluded from enforcing a garnishment lien after the judgment debtor filed a chapter 7 petition without relief from the stay, nothing prevents that creditor from attempting to realize on the garnishment lien after discharge when the stay has expired.

Before this bankruptcy case was filed, FinanceCo garnished Jonathan Ledin's account at Commerce Bank and attached $333.49. After he was discharged, Ledin sued Commerce in state court to obtain a release of the garnished funds. Commerce filed a third-party interpleader petition, adding both Ledin and FinanceCo as defendants, and paid the funds into the court's registry for the court's determination of whether Ledin or FinanceCo was entitled to the funds. Instead of participating in that process, Ledin presented an *ex parte* order to a Reno County judge to pay out the funds to him and the judge entered it. After discovering that Ledin obtained the funds, FinanceCo moved to alter or amend that order asking that the funds be returned to the court's registry and that the court determine the parties' respective rights in them. Ledin claims that FinanceCo's effort to set aside the *ex parte* order is an attempt to collect a discharged, prepetition debt from him personally and seeks to have FinanceCo held in contempt. But because FinanceCo's efforts only extend to recovering the funds its garnishment lien attached and not to hold Ledin personally responsible, FinanceCo did not violate the discharge injunction. Even if FinanceCo's actions did violate 11 U.S.C. § 524(a), Ledin has received more than the amount

2

garnished and has been made whole. Ledin's motion for contempt is therefore DENIED.

Facts[1]

In July of 2009, creditor FinanceCo of Kansas, Inc. obtained an agreed journal entry of judgment against Jonathan Ledin in the principal amount of $6,020.43 in the District Court of Reno County, Kansas.[2] In June of 2014, FinanceCo garnished Ledin's bank accounts at Commerce Bank in an effort to collect the judgment (the "June Garnishment"). After Ledin replied to the June Garnishment claiming that the funds were exempt social security benefits, the Reno County court conducted a hearing and overruled the objection, ordering Commerce to pay the garnished funds to FinanceCo.[3] On September 5, 2014, FinanceCo served another garnishment order on Commerce (the "September Garnishment").[4] Commerce answered on September 15, this time stating that it held $333.49 plus an administrative fee of $15.[5] On September 9, Commerce wrote Ledin a letter terminating their banking relationship and closing his accounts effective October 10.[6] Ledin replied to the September

---

[1] I conducted an evidentiary hearing in this matter on March 16, 2016. The debtor, Jonathan Ledin, appeared *pro se*. FinanceCo of Kansas, Inc. appeared by its attorney, Samantha M.F. Woods and its corporate secretary, Dennis Lubbers. These are my findings of fact followed by my conclusions of law made in this contested matter pursuant to Fed. R. Bankr. P. 7052.

[2] Ex. G, p. 45. With interest accruing thereon at the rate of 21% per annum from October 3, 2008, the judgment had grown to $15,161.63 when FinanceCo garnished Ledin's bank accounts in September of 2014. *See* Ex. G, p. 50.

[3] Ledin claimed, as he did here in a later adversary proceeding, that the Social Security Act and various banking regulations restrict creditors from garnishing and banks from paying out certain social security payments. *See* 31 C.F.R. § 212.6(a). The Reno County court rejected that argument in the June Garnishment case. Ex. G, pp. 47-48.

[4] Ex. G, pp. 50-51.

[5] Ex. G, p. 53. Commerce was authorized to withhold the $15 administrative fee by KAN. STAT. ANN. § 60-733(a) (2015 Supp.).

[6] Ex. G, p. 71.

3

Garnishment, again claiming that the funds on deposit were exempt from garnishment because they consisted of social security benefits directly deposited to his account and requesting a hearing that the court set for September 29, 2014.[7] At that hearing, the Reno County court directed the debtor to file bank statements for July, August, and September of 2014 not later than October 19, presumably so the court and FinanceCo could review them to determine whether actual social security funds had been deposited.[8] On October 14, 2014, Ledin filed this chapter 7 bankruptcy case. No further action on the September Garnishment was taken during the pendency of the bankruptcy until after Ledin received his chapter 7 discharge on April 14, 2015.

While in chapter 7, Ledin (a prolific *pro se* litigant) filed an adversary proceeding against Commerce, its branch manager, FinanceCo, and its attorney who handled the garnishments, claiming an "illegal garnishment" and seeking damages for their impairing his exempt interest in the social security funds and violating certain federal statutes and regulations in connection with the June and September Garnishments.[9] I dismissed that proceeding for failure to state a claim.[10]

In September of 2015, after he was discharged, Ledin sued Commerce in Reno County District Court for return of the garnished funds.[11] Commerce answered, denied liability, and filed a third-party interpleader petition, adding FinanceCo as a

---

[7] *See* KAN. STAT. ANN. § 60-735 (2015 Supp.).
[8] Ex. G, pp. 74-75.
[9] *Ledin v. FinanceCo of Kansas, Inc., et al. (In re Ledin),* Adv. No. 14-5193 (Bankr. D. Kan.).
[10] See the order entered in that proceeding for a more detailed description of the litigation waged in this Court, and, before that, the Reno County District Court. *See* Adv. No. 14-5193, Dkt. 51.
[11] Ex. A. *Ledin v. Commerce Bank,* Case No. 2015 CV 295 (D. Ct. of Reno County, Kan.).

4

third-party defendant and seeking to pay into court the $348.49 it held, plus Ledin's filing fee of $202.80 and service costs, for a total of $566.29.[12] On October 30, 2015, the state court heard and entered an order granting the third-party petition for interpleader, directing Commerce to pay the funds into the court's registry, which it did, and requiring Ledin and FinanceCo to each prosecute their respective claims to the money.[13] On November 3, 2015, without notice to the other parties, Ledin presented an *ex parte* order directing the Reno County court's clerk to pay over the interpleaded funds of $566.29 to him. Another Reno County judge entered that order and the clerk paid the funds to Ledin that day.[14]

When FinanceCo learned of the *ex parte* order, it filed a Motion to Alter and Amend on November 25, 2015.[15] That motion noted that that the earlier order had been entered without notice to any other parties and requested that the funds be returned to the court registry so that the court could determine to whom they should be paid. In response to that motion, Ledin filed his "Motion for an Order to Show Cause" here, seeking to hold FinanceCo in contempt of his bankruptcy discharge by filing the reconsideration motion in Reno County.[16]  On January 6, 2016, the Reno

---

[12] Ex. B.

[13] Ex. E.

[14] Ex. F.

[15] Ex. G, 26-32.

[16] Dkt. 66. Ledin also demanded a jury trial on that motion. Dkt. 91. I denied that demand from the bench on March 3, 2016, *see* Dkt. 94, 96. Civil contempt claimants are not entitled to a trial by jury on either the issue of contempt or compensatory damages. *See Federal Trade Commission v. Kuykendall,* 371 F.3d 745, 751-54 (10th Cir. 2004); *Reliance Ins. Co. v. Mast Constr. Co.,* 159 F.3d 1311, 1318 (10th Cir. 1998). *See also Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41 (1989) (Seventh Amendment protects right to jury trial only if cause of action is legal in nature, as opposed to equitable); *Mountain Am. Credit Union v. Skinner (In re Skinner),* 917 F.2d 444, 447 (10th Cir. 1990) (bankruptcy courts are empowered to exercise civil contempt and equitable powers under 11 U.S.C. § 105(a)); *Paul v. Iglehart (In re Paul),* 534 F.3d 1303, 1306-07 (10th Cir. 2008) (bankruptcy courts have equitable power under § 105(a) to enforce and remedy violations of the discharge

**5**

County court set the *ex parte* order aside and directed that a hearing be scheduled to determine who was entitled to recover the garnished funds.[17] The state court did not direct Ledin to return the funds and he hasn't. On February 26, FinanceCo orally moved to dismiss Ledin's suit with prejudice and to allow him to retain all the interpleaded funds. The Reno County court entered an agreed order signed by counsel for FinanceCo and Ledin dismissing the state case on February 26, 2016.[18]

Ledin claims that FinanceCo's actions violated the discharge injunction and caused him both bodily harm and emotional distress. He seeks damages of $150,000. But, other than stress, loss of sleep, and distraction, Ledin offered no medical evidence of any specific physical or psychic injury to support either the validity or the extent of his damage claim at trial. Nor did he offer any evidence of lost interest or income as a result of FinanceCo's actions. Ledin called Mr. Dennis Lubbers, FinanceCo's corporate secretary, in his case in chief. Mr. Lubbers testified that he had no knowledge of Ledin's file and hadn't been involved in the collection of the judgment or in instructing FinanceCo's lawyers as they represented the company's interests.

---

injunction); *Barrientos v. Wells Fargo Bank, N.A.,* 633 F.3d 1186 (9th Cir. 2011) (Sections 105(a) and 524 do not create a private cause of action for damages for violation of the discharge injunction; the remedy for discharge injunction violations is an order of contempt). In any event, FinanceCo declined to consent to a jury trial by a bankruptcy judge, thereby precluding my conducting a jury trial on Ledin's contempt proceeding. 28 U.S.C. § 157(e).

[17] Ex. H.

[18] Ex. J.

**6**

Ledin submitted a trial brief.[19] I offered FinanceCo an opportunity to file a responsive brief, but its counsel advised the Clerk that they would stand on the evidence, their pleadings, and closing argument.

<u>Analysis</u>

Ledin claims that FinanceCo's motion to reconsider the *ex parte* order violated his discharge injunction because FinanceCo was continuing to collect a discharged debt. That is incorrect. Section 524(a)(1) provides that the discharge voids any judgment as to a personal obligation of the debtor with respect to a discharged debt and subsection (a)(2) states that the discharge "operates as an injunction against the commencement or continuation of an action … to collect … any such debt *as a personal liability of the debtor* …."[20] Collecting a discharged pre-petition judgment *in personam* is barred and doing so would be punishable as civil contempt under 11 U.S.C. § 105(a).[21] But, nothing in § 524 precludes a creditor from enforcing a prepetition garnishment lien that has survived the debtor's chapter 7 discharge. This is all FinanceCo sought to do and it is not a violation of the discharge injunction.

Under Kansas law, FinanceCo's order of garnishment created a lien on the debtor's deposits in the hands of Commerce.[22] A garnishment order "shall have the

---

[19] Dkt. 105.

[20] 11 U.S.C. § 524(a).

[21] *Mountain Am. Credit Union v. Skinner (In re Skinner),* 917 F.2d 444, 447 (10th Cir. 1990) (bankruptcy courts are empowered to exercise civil contempt and equitable powers under 11 U.S.C. § 105(a)); *Paul v. Iglehart (In re Paul),* 534 F.3d 1303, 1306-07 (10th Cir. 2008) (bankruptcy courts have equitable power under § 105(a) to enforce and remedy violations of the discharge injunction).

[22] KAN. STAT. ANN § 60-732 (2005) and § 60-733 (2015 Supp.). *See In re Hilgers*, 352 B.R. 298, 309 (Bankr. D. Kan. 2006), *aff'd* 371 B.R. 465 (10th Cir. B.A.P. 2007), *aff'd* 279 Fed. Appx. 662 (10th Cir. May 20, 2008). *See also In re Boden*, 61 B.R. 329, 331 (Bankr. D. Kan. 1986) (construing predecessor statute § 60-717 in effect until its repeal in 2002 and replacement with § 60-732(c)).

7

effect of attaching: . . . funds, credits or other indebtedness belonging to or owing the

judgment debtor . . . which is in the possession or under the control of the garnishee,

and all such credits and indebtedness due from the garnishee to the judgment debtor

*at the time of service of the order.*"[23] Thus, when the order of garnishment was served

on Commerce prior to Ledin's bankruptcy filing, FinanceCo obtained a lien on the

$333.49 that Commerce held on deposit for Ledin.[24] Because the Reno County court

did not issue an order directing Commerce to pay the funds to FinanceCo before Ledin

filed his bankruptcy case, their ownership never changed.[25] The deposits continued

to be Ledin's property, though subject to FinanceCo's garnishment lien.[26] When he

filed his bankruptcy petition, those funds became property of the bankruptcy estate

and still remained subject to the lien.[27]

---

[23] KAN. STAT. ANN § 60-732(c)(1) (2005) (Emphasis added).

[24] *See Johnson v. Brant,* 38 Kan. 754, 17 P. 794 (1988) (when judgment creditor garnishes a bank he acquires a lien on only such non-exempt property of the judgment debtor as the bank holds when the garnishment is served); *R.T. Davis Mill Co. v. Bangs,* 6 Kan. App. 38, 49 P. 628 (1897) (garnishment attaches a lien on the property of the debtor in the hands of the garnishee from the time of the service of the same); *In re Rodriguez,* 140 B.R. 562, 564 (Bankr. D. Kan. 1992) (garnishment lien attaches at time of service of order of garnishment, regardless of whether garnished funds were ever paid into registry of court).

[25] *See In re Thomas,* 215 B.R. 873, 875 (Bankr. E.D. Mo 1997) (garnished funds are owned by judgment debtor until court orders these funds paid over to judgment creditor); *In re Bensen,* 262 B.R. 371, 380-81 (Bankr. N.D. Tex 2001) (lien against funds in bank account was fixed where writ of garnishment was served prepetition but garnishment action was not completed prepetition; title to garnished property did not pass to judgment creditor merely upon service of writ); *In re Drum Corps Ass'n of Spokane,* 22 B.R. 929, 933 (Bankr. E.D. Wa. 1982) (where order to pay out garnished funds was stayed by debtor's bankruptcy filing, debtor still possessed an interest in the funds and they became property of the estate).

[26] KAN. STAT. ANN § 60-739(b) (2015 Supp.) provides that if an order to pay in is not issued within 60 days of the garnishee's answer, the garnishee *may* release the deposits to the judgment debtor.

[27] 11 U.S.C. § 541(a); *In re Johnson,* 479 B.R. 159 (Bankr. N.D. Ga 2012) (funds in garnishee's possession at time of bankruptcy filing are property of the estate; auto stay prevented judgment creditor from seeking disbursement of any funds held by garnishee, but creditor's lien attaches to garnished funds upon service of garnishment order and bankruptcy filing does not affect the judgment creditor's lien).

8

The trustee did not avoid the garnishment lien during the chapter 7 administration.[28] Liens that are not avoided during bankruptcy administration "ride through" a chapter 7 bankruptcy case and survive the debtor's discharge.[29] Though FinanceCo was certainly stayed from enforcing that lien during the pendency of the bankruptcy case by the automatic stay, nothing precluded it from enforcing that lien post-discharge.[30] Section 524(a)(1) enjoins continuing to collect a debt "as a personal liability of the debtor." It does not enjoin a creditor from realizing on a prepetition lien. In *In re Johnson*, a Georgia bankruptcy court explained that the automatic stay doesn't require a garnishing creditor to dismiss its garnishment action or release a garnishment lien, but that before the creditor takes further action, stay relief would be required.[31] Here, no stay relief is required for FinanceCo to proceed to realize upon its garnishment lien because there is no longer a stay. It expired upon the entry of the debtor's discharge order.[32] Accordingly, nothing prevented FinanceCo from filing its motion to alter and amend the November 2015 court order that set the interpleaded funds over to Ledin. That motion merely sought to restore the parties to

---

[28] For example, in appropriate circumstances, the trustee could have avoided the lien as a preferential transfer under 11 U.S.C. § 547(b), or if the garnishment lien encumbered exempt property, the debtor might have avoided the lien as impairing an exemption under 11 U.S.C. § 522(f).

[29] *See Johnson v. Home State Bank,* 501 U.S. 78, 82-83 (1991) (mortgage survives chapter 7 discharge; only the personal liability of debtor is extinguished by the discharge); *Long v. Bullard*, 117 U.S. 617, 620-21 (1886); *In re Johnson*, 479 B.R. 159, 171 (Bankr. N.D. Ga. 2012); *In re Willis,* 199 B.R. 153, (Bankr. W.D. Ky. 1995) (a lien "rides through" bankruptcy unaffected, unless the lien is disallowed or avoided).

[30] The automatic stay terminates the earlier of the time the case is closed or a discharge is granted or when property is no longer property of the estate. 11 U.S.C. § 362(c)(1) and (2).

[31] 479 B.R. 159, 171-72.

[32] 11 U.S.C. § 362(c)(2)(C).

**9**

their previous litigation positions so that the state court could determine whether FinanceCo or Ledin was entitled to the funds. The discharge doesn't enjoin that.

In February, 2016, FinanceCo abandoned its efforts to enforce its garnishment lien and recover the garnished funds and, with the debtor's approval, the Reno County case was dismissed with prejudice.[33] Ledin remains in possession not only of the $348.49 garnished from his Commerce accounts, but also his state court case filing fee and costs that Commerce interpleaded into court. He has been more than made whole. In a somewhat similar setting, another Kansas bankruptcy judge has held that once a garnishing creditor released garnished wages to the debtor, that debtor's motion to avoid the garnishment lien was moot.[34] Even if the facts and law warranted my finding that FinanceCo had violated the discharge injunction, Ledin has not demonstrated any compensatory damages that I could award beyond restoring to him his funds on deposit with Commerce.

Conclusion

While this Court takes discharge violations very seriously, FinanceCo's effort to enforce a prepetition garnishment lien *in rem* is not such a violation. Even if I were to find FinanceCo in contempt, which I do not, Ledin has been made whole by recovering and retaining all of the interpleaded funds of $566.29. Lacking any factual or legal support, Jonathan Ledin's Motion for Contempt against FinanceCo is DENIED.

# # #

---

[33] Ex. J.
[34] *See In re Rodriguez*, 140 B.R. 562, 564 (Bankr. D. Kan. 1992).